(C. D. 1045)

JAMES H. RHODES & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 21, 1947)

*John D. Rode (Jacob L. Klingaman* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil* and *Richard F. Weeks,* special attorneys), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Mollison, Judge: The merchandise the subject of these protests consists of certain sponges imported from Cuba and assessed with duty by the collector of customs at the rate of 15 per centum ad valorem under the provisions of paragraph 1545 of the Tariff Act of 1930, as amended by the trade agreement with the United Kingdom published in T. D. 49753, less 20 per centum of such duty by reason of the preferential reduction in duty granted to Cuba in accordance with the Convention of Commercial Reciprocity of 1902 between the United States and Cuba and the Cuban Trade Agreement published in T. D. 47232. The aforementioned trade agreement with the United Kingdom reduced the rate of duty on "Sponges: * * * Commercially known as * * * grass" from 20 per centum ad valorem to 15 per centum ad valorem. Each of the protests claims that the merchandise is properly dutiable at only 6 per centum ad valorem under the provision in paragraph 1545, as amended by the Cuban Trade Agreement, supra, for "Sponges not specially provided for."

There is no real dispute as to the facts. It appears from the record that up to about 4 years ago sponges of the character of those at bar, represented by collective exhibit 1, were not imported or dealt in commercially in this country, but that at, prior, and subsequent to that time, the United States trade and commerce knew and dealt in a sponge known as a "grass" sponge which was of a character different from those at bar. However, because of wartime shortages and a blight which occurred about that time which seriously impaired the supply of what was called by one of the witnesses "regular" grass sponges, those of the character of the importations before us began to come in.

It appears that these are of the same family of marine animals as regular grass sponges and became known and dealt in generally by the trade under various names such as "new grass sponges," "marine grass sponges," or "new Cuban grass sponges." Although they have texture and fibers which identify them with the grass family of sponges, it appears that sponges of the character of those before us have different physical characteristics and different uses from those of the regular grass sponges, and that some method of differentiating them from regular grass sponges is and has been always used in purchases and sales, either by the use of the terms referred to above or by the addition of a distinctive name, e. g., "Matacambia."

There does not seem to be any question but that at the time of the passage of the Tariff Act of 1930 and on the effective date of the trade agreement with the United Kingdom, sponges of the type of those in issue were not commercially known in the United States as "grass" sponges. The defendant, however, invokes the well-known rule of tariff construction that "tariff statutes are made for the future as

well as for the present." In connection with *eo nomine* tariff designations, it has been held, following this rule, that tariff laws embrace articles which may not have been in existence, or even though they actually existed, have been little availed of, at the time of the passage of such laws, but which were later made available or developed. *Chicago Mica Co. et al.* v. *United States*, 21 C. C. P. A. 401, T. D. 46927.

There is no doubt that sponges of the character of those here involved were not in commercial existence at the time of passage of the tariff act or the conclusion of the trade agreement, and that they became commercially known thereafter. As we view it, however, the record shows that the rule relied on by defendant has no application in the present instance. It clearly appears from the evidence that not only at the time of the passage of the Tariff Act of 1930, the conclusion of the trade agreement, the time of importation, but even at the time of trial, sponges of the character of those at bar were not commercially known as grass sponges since the trade reserved that appellation to the articles which have been referred to as regular grass sponges and carefully differentiated those sponges from the so-called "new grass" sponges of the type of those at bar.

Counsel for the defendant has cited the case of *Centennial Flouring Mills Co. et al.* v. *United States*, 29 C. C. P. A. 264, C. A. D. 200, for the proposition that "a tariff designation which is unqualified is sufficiently broad to cover the designated type of article in all its varieties." We think it sufficient to say that the designation "Sponges: * * * Commercially known as * * * grass" *is* a qualified designation, and the qualification excludes therefrom merchandise of the type before us.

There is no question but that the merchandise in question is not otherwise provided for as sponges, and it therefore takes classification under the provision for sponges not specially provided for, as claimed by the plaintiff. The vice president of the plaintiff corporation identified the bales containing the sponges represented by collective exhibit 1 and on which claim was made. The list of bales is contained in schedule A, attached to and made a part of this decision, and judgment will issue sustaining the claim for duty at the rate of 6 per centum ad valorem under the provisions of paragraph 1545, as amended by the Cuban Trade Agreement, T. D. 47232, as to such merchandise only, and directing the collector to reliquidate the entries accordingly.